J-S36017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RYAN M. ECKHART, :
:
Appellant : No. 3900 EDA 2017

Appeal from the Judgment of Sentence November 14, 2017
In the Court of Common Pleas of Carbon County
Criminal Division at No.: CP-13-CR-0000898-2011

BEFORE: GANTMAN, P.J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY DUBOW, J.: **FILED DECEMBER 11, 2018**

Appellant, Ryan M. Eckhart, appeals from the November 14, 2017 Judgment of Sentence entered in the Court of Common Pleas of Carbon County following the revocation of his parole. We affirm on the basis of the trial court's January 22, 2018 Opinion.

In its Pa.R.A.P. 1925(a) Opinion, the trial court set forth the underlying facts. *See* Trial Court Opinion, filed 1/22/18, at 1-5. Briefly, on January 19, 2012, Appellant entered a guilty plea to one count of Driving Under the Influence of a Controlled Substance.[1] The trial court imposed a term of ninety days to five years' imprisonment.

---

[1] 75 Pa.C.S. § 3802(d)(1)(i).

Over the next several years, the court revoked Appellant's parole several times for his failure to comply with a zero-tolerance policy for drug use and possession, as well as missed drug tests.

On October 31, 2016, Carbon County Adult Probation Officer Kimberly Cooper filed a Petition to Revoke Appellant's parole, alleging that Appellant (1) tested positive for amphetamines on September 14, 2016; (2) failed to submit a scheduled urine screen on October 5, 2016; and (3) "was unsuccessfully discharged" from drug and alcohol treatment on October 18, 2016. Petition to Revoke, 10/31/16. Officer Cooper also requested that the court issue an arrest warrant for Appellant. Due to a breakdown in the court's operation, the court did not properly process and file the Petition or issue an arrest warrant.

On August 4, 2017, the Clerk of Courts issued the arrest warrant for Appellant.[2] Officers arrested Appellant on August 8, 2017, and served him with the revocation Petition.

On October 27, 2017, the trial court, sitting as the parole violation ("VOP") court, conducted a VOP hearing at which Officer Cooper and Appellant testified. Appellant stipulated to the violations, but challenged the timeliness of the delayed revocation hearing and the Commonwealth's diligence pursuant

---

[2] Officer Cooper testified that she discovered the error, notified the court, and submitted an expedited request for the issuance of the arrest warrant. N.T. VOP, 10/27/17, at 18-19.

- 2 -

to Pennsylvania Rule of Criminal Procedure 708. *See* N.T. VOP, 10/27/17, at 4, 9, 44-45.

After consideration of the foregoing and additional briefing by the parties, the VOP court found that Appellant had violated his parole. On November 14, 2017, the VOP court recommitted Appellant for 202 days' incarceration with credit for time served.

Appellant filed a timely Notice of Appeal. Both Appellant and the VOP court complied with Pa.R.A.P. 1925.

Appellant presents one issue for our review:

> Whether the [t]rial [c]ourt erred when it found the one year delay in resolving the Commonwealth's petition to revoke [Appellant's] parole reasonable under Pa.R.Crim.P. 708?

Appellant's Brief at 4.

Appellant avers that the VOP court violated his right to a speedy revocation hearing under Pa.R.Crim.P. 708. Appellant's Brief at 10-20. Rule 708 provides, in part, that a parole revocation hearing must be "held **as speedily as possible** at which the defendant is present and represented by counsel." Pa.R.Crim.P. 708(B)(1) (emphasis added). "In evaluating the reasonableness of a delay, the court examines three factors: the length of the delay; the reasons for the delay; and the prejudice resulting to the defendant from the delay." *Commonwealth v. Clark*, 847 A.2d 122, 124 (Pa. Super. 2004). "When examining the reasons for the delay, the court looks at the circumstances surrounding the delay to determine whether the

- 3 -

Commonwealth acted with due diligence in scheduling the revocation hearing." ***Commonwealth v. Christmas***, 995 A.2d 1259, 1263 (Pa. Super. 2010) (citing ***Clark***, 847 A.2d at 124).

After a thorough review of the certified record, the briefs of the parties, the applicable law, and the trial court Opinion, we conclude that there is no merit to Appellant's challenge. The Honorable Roger N. Nanovic, sitting as the VOP court, has authored a comprehensive, thorough, and well-reasoned Opinion, citing the record and relevant case law in addressing Appellant's claim. ***See*** Trial Court Opinion, filed 1/22/18, at 5-12 (concluding that there is no merit to Appellant's claim because the one-year delay did not prejudice Appellant insofar as (1) his purported loss of a mitigation argument is speculative and does not qualify as "the loss of essential witnesses or evidence" as contemplated by the rule and case law, particularly where Appellant stipulated to his violations; and (2) Appellant's contention that he would have been released from prison upon reaching his "maximum date" had he been arrested earlier is speculative). We, thus, affirm on the basis of the trial court's January 22, 2018 Opinion.

The parties are instructed to attach a copy of the trial court's January 22, 2018 Opinion to all future filings.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/11/18

IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA
CRIMINAL DIVISION - LAW

COMMONWEALTH OF PENNSYLVANIA    :
                                :
           v.                   :    No. CR-898-2011
                                :
RYAN ECKHART,                   :
                                :
           Defendant            :

Brian B. Gazo, Esquire          Counsel for the Commonwealth
Assistant District Attorney

Matthew Mottola, Esquire        Counsel for the Defendant
Assistant Public Defender

MEMORANDUM OPINION

Nanovic, P.J. - January 22, 2018

Under Pa.R.Crim.P. 708 (B)(1), parole and probation revocation hearings must be held within a reasonable time. When this does not occur and the defendant is prejudiced by the delay, the underlying petition should be dismissed. So argues the Defendant in opposing the petition to revoke Defendant's parole filed by the Carbon County Adult Probation Office on October 31, 2016.

FACTUAL AND PROCEDURAL BACKGROUND

On January 19, 2012, Senior Judge Richard W. Webb sentenced Ryan Eckert, the defendant in these proceedings, to serve no less than ninety days nor more than five years in the Carbon County Correctional Facility for his conviction of driving under the influence of a schedule one controlled substance, heroin, as a second offense. The sentence contained a zero-tolerance

[FN-2-18]

provision for Defendant's use or possession of illegal controlled substances and for missed urine screens. With credit granted for fifty-one days, the sentence was set to expire on November 30, 2016 (the "max date").

Unfortunately, Defendant was not able to comply with the zero-tolerance provision and, as a result, his parole has been revoked three times. (N.T., 10/27/17, p. 10). The first revocation occurred on October 10, 2013, when Defendant was recommitted to serve the balance of his sentence and made eligible for re-parole after serving a minimum six-month period of imprisonment. The second revocation occurred on October 1, 2015. Again, Defendant was recommitted to serve the balance of his sentence, with the court conditioning Defendant's eligibility for parole on or after May 1, 2016, upon his admission into a long-term inpatient drug and alcohol rehabilitation facility. (N.T., 10/27/17, p. 13).[1] The third revocation, and the revocation which is the subject of these proceedings, began with the filing by the Carbon County Adult Probation Office of a revocation petition on October 31, 2016.

In its petition, the Probation Office alleged that Defendant tested positive for amphetamines on September 14,

[1] Defendant was paroled on May 12, 2016, to an inpatient program at Conewego Snyder, which he successfully completed on July 29, 2016. On Defendant's discharge from this facility, it was recommended that he attend one individual and two group counseling sessions every week beginning September 6, 2016. Between September 6, 2016, and October 8, 2016, Defendant attended a total of one individual and two group sessions, resulting in his unsuccessful discharge from outpatient counseling on October 18, 2016, due to his failure to keep scheduled appointments. (N.T., 10/27/17, pp. 14, 23-24, 35-36).

2016, failed to submit to a scheduled urine screen on October 5, 2016, and was unsuccessfully discharged from drug and alcohol treatment on October 18, 2016. These violations were not disputed by Defendant at the time of his revocation hearing held on October 27, 2017. (N.T., 10/27/17, pp. 4, 44-45). Instead, Defendant argued that the one-year delay in resolving the Commonwealth's petition was unreasonable and required dismissal, with prejudice, of the violations.

In its petition filed on October 31, 2016, the Probation Office requested that an arrest warrant be issued for Defendant's apprehension and stated that service of the petition would be made on Defendant at the time of apprehension. (N.T., 10/27/17, p. 16). On the same date this petition was filed, the court entered an order directing the issuance of an arrest warrant, however, due to an oversight in the Clerk of Courts Office, no warrant was issued until August 4, 2017. (N.T., 10/27/17, pp. 17-18). This breakdown in processing the arrest warrant was discovered when the probation officer responsible for filing the petition for revocation - Kimberly Cooper - first learned that same day that Defendant was not in prison, but had been visiting the prison to deposit monies in a female inmate's account, and immediately requested the Clerk's Office to process Defendant's arrest warrant on an expedited basis. (N.T., 10/27/17, pp. 18-19, 28-29). Upon the issuance of the arrest

warrant, Defendant was arrested four days later, on August 8, 2017. (N.T., 10/27/17, pp. 17, 20).

At the revocation hearing held on October 27, 2017, Defendant claimed "the petition should be dismissed because the hearing was untimely under Pa.R.Crim.P. 708(B)(1)." (Defendant's Brief in Support of Dismissal of Petition to Revoke Parole, p. 1). Defendant argued the Commonwealth did not act diligently to monitor and ensure that the Clerk of Courts Office timely processed the petition and issued an arrest warrant, and that the resulting delay in holding the revocation hearing was prejudicial.

At the conclusion of the revocation hearing, we requested counsel to brief Defendant's claim that the delay between when the petition for revocation was filed and the hearing was held was unreasonable and required dismissal of the petition. Defendant's brief was filed on October 30, 2017, and the Commonwealth's brief was filed on November 3, 2017. By Order dated November 14, 2017, we granted the Commonwealth's request for revocation and recommitted the Defendant to prison for 202 days, less credit for Defendant's confinement in the Carbon County Correctional Facility since his arrest on August 8, 2017, and an additional seventy-eight days for Defendant's successful completion of inpatient treatment at Conewego Snyder for the period from May 12, 2016, through July 29, 2016. The order

contained an extensive annotation explaining the reasons for our decision.

On November 22, 2017, Defendant filed his appeal to the Pennsylvania Superior Court from the November 14, 2017, order granting revocation. In his appeal, Defendant raises one issue: Whether "[t]he Trial Court erred when it found the one-year delay in resolving the Commonwealth's petition to revoke [Defendant's] parole reasonable under Pa.R.Crim.P. 708." *See* Defendant's Concise Statement of Errors Complained of on Appeal filed on December 11, 2017. In his concise statement, Defendant further states that "[d]espite finding that this delay was intrinsically unreasonable and that the Commonwealth did not act diligently in resolving this petition, the Trial Court erred when it found this delay reasonable because it concluded that [Defendant] was not prejudiced by this delay".

## DISCUSSION

A revocation hearing must be held within a "reasonable time" from when a petition seeking revocation on technical grounds is filed. Commonwealth v. Christmas, 995 A.2d 1259, 1262 (Pa.Super. 2010) (interpreting Rule 708's language requiring a hearing to be held "as speedily as possible" to mean within a reasonable time), *appeal denied*, 53 A.3d 756 (Pa. 2012).[2] The primary purpose of this prompt hearing requirement

---

[2] Pennsylvania Rule of Civil Procedure 708(B) provides, in relevant part:

[FN-2-18]

5

is to prevent the loss of essential witnesses or evidence that would adversely affect the fairness of the revocation process and to prevent unnecessary detention or other limitations on the offender's personal liberty. Commonwealth v. Marchesano, 544 A.2d 1333, 1336 (Pa. 1988).

"[T]he reasonableness of the delay in the holding of a revocation hearing is to be determined by an inquiry into the circumstances of the individual case. Three of the circumstances into which the court inquires are the length of the delay, the reasons which do or do not justify it, and whether the Defendant was prejudiced by the delay." Commonwealth v. Marchesano, 544 A.2d at 1336. There is no presumptive or *per se* rule finding prejudice to exist after a certain defined period of time or "whenever a revocation hearing is held after the period that probation [or parole] has expired." *Id.* at 1336. Rather, courts must consider whether the delay was reasonable under the circumstances of the specific case and whether actual prejudice to the defendant resulted.

---

Rule 708.  Violation of Probation, Intermediate Punishment, or Parole: Hearing and Disposition

(B) Whenever a Defendant has been sentenced to probation or intermediate punishment, or placed on parole, the judge shall not revoke such probation, intermediate punishment, or parole as allowed by law unless there has been:

(1) a hearing held as speedily as possible at which the Defendant is present and represented by counsel; and

(2) a finding of record that the Defendant violated a condition of probation, intermediate punishment, or parole.

Pa.R.Crim.P. 708(B).

[FN-2-18]

6

Marchesano, 544 A.2d at 1336-37. It is Defendant's burden to prove prejudice. Commonwealth v. Christmas, 995 A.2d at 1263.

With respect to the three factors identified in Marchesano for evaluating the reasonableness of a delay, the length of the delay in the case *sub judice* was approximately one year: from October 31, 2016 (the date the revocation petition was filed) until October 27, 2017 (the date the revocation hearing was held). The reason for this delay was primarily due to a breakdown in the Clerk of Courts Office in issuing the arrest warrant (from October 31, 2016 until August 4, 2017) and thereafter due to delay inherent in revocation proceedings. A Gagnon I hearing was held on August 28, 2017, one month after Defendant's arrest, and a Gagnon II hearing was held on October 27, 2017, two months later.

Here, both the period of the delay (*i.e.*, twelve months) and reason for the delay (*i.e.*, the delay in issuing the arrest warrant) favor dismissal of the petition. *See* Commonwealth v. Bischof, 616 A.2d 6, 8-10 (Pa.Super. 1992) (citing delay periods of 12, 22 ½ and 9 ½ months as unreasonable; finding the Commonwealth not to have proceeded with due diligence in scheduling the revocation hearing where the reason given for fifteen months of the delay was the need to obtain a certified copy of defendant's conviction (the underlying basis for the revocation), which the parole department took no affirmative

steps to track during this fifteen-month period, and an additional seven months thereafter until the hearing was held, which the Commonwealth took no steps to expedite). Notwithstanding this predisposition, the period of delay here is significantly less than the twenty-two month delay in Bischof, and while we have concluded that the Parole Office failed to exercise due diligence in making inquiry of the Clerk's office during the nine-month period it took for the arrest warrant to be issued, we find no fault with the Commonwealth as to the ensuing three month delay before the hearing was held, much of which we consider to be intrinsic in the two-step revocation process. (N.T., 10/27/17, pp. 32-33). *See* Morrissey v. Brewer, 408 U.S. 471, 488, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (finding that a period of two months between the preliminary hearing and the final revocation hearing was "not unreasonable").

Moreover, the period and cause of the delay are not dispositive factors in and of themselves and do not entitle an offender to dismissal of the petition absent a finding of prejudice. *See* Commonwealth v. Bischof, 616 A.2d at 9.

> Prejudice in this context has been interpreted as being something which would detract from the probative value and reliability of the facts considered, vitiating the reliability of the outcome itself. One specific purpose of our rule in requiring a prompt revocation hearing is to avoid such prejudice by preventing the loss of essential witnesses or evidence, the absence of which would contribute adversely to the determination. Another is to prevent unnecessary restraint of personal liberty.

[FN-2-18]

8

Commonwealth v. Dickens, 327 Pa.Super. 147, 475 A.2d 141 (1984); Commonwealth v. Ballard, 292 Pa.Super. 129, 436 A.2d 1039 (1981).

Commonwealth v. Marchesano, 544 A.2d at 1336.

Defendant claims prejudice in two respects. First, that had the hearing been held shortly after the revocation petition was filed, he would have had a viable argument for mitigation given his recent successful completion of inpatient treatment at Conewego Snyder and second, had he been arrested before the max date, he would have been released from prison on this date, pending resolution of the petition, a necessarily shorter period of time than the eighty-one days he spent in prison prior to the October 27, 2017, revocation hearing. (N.T., 10/27/17, p. 30). Both, we conclude, are unavailing to Defendant.

As to the first, such is not prejudice as defined by the Pennsylvania Supreme Court. Defendant suffered no harm attributable to "the loss of essential witnesses or evidence, the absence of which would contribute adversely to the determination" because of the delay. The violations were stipulated to and, therefore, not in dispute. All indicated that notwithstanding Defendant's discharge from Conewego Snyder on July 29, 2016, he was still using illegal drugs and not complying with the zero-tolerance provision of his sentence. That this was further confirmed by his subsequent possession and use of illegal drugs after November 30, 2016, was conduct within

Defendant's control and constituted *new* evidence for which he bears the risk, not a *loss of evidence* by which Defendant was prejudiced. (N.T. 10/27/17, pp. 19-20, 43, 49-50, 52).

As to Defendant's second claim of prejudice, that he was unnecessarily imprisoned for longer than he would have been if he had been arrested before November 30, 2016, this is both speculative and unlikely. The petition to revoke Defendant's parole was filed thirty days before Defendant's max date. Whether it can fairly be said that had the warrant been issued immediately, Defendant would have been located and arrested within this thirty-day period is uncertain. But even if this were the case, Officer Cooper testified that given Defendant's past history of drug use, his prior two revocations, and the current violations, the Probation Office's recommendation to revoke Defendant's parole and recommit him for 202 days would have been unchanged. (N.T., 10/27/17, pp. 21-24, 33-34).[3]

---

[3] This period of 202 days represents the period between May 12, 2016, when Defendant was previously released on parole and admitted into the inpatient program at Conewego Snyder, and Defendant's max date of November 30, 2016. (N.T., 10/27/17, pp. 21, 31). While we accepted this time span for recommitting Defendant to prison in our November 14, 2017, order revoking Defendant's parole, we also gave Defendant full credit for the seventy-eight days he spent in inpatient treatment at Conewego Snyder.

Taking into account this seventy-eight day period Defendant was in inpatient treatment at Conewego Snyder, and considering Defendant was arrested and incarcerated on August 8, 2017, Defendant will have fully served the 202 days for which he was recommitted as of December 10, 2017. This notwithstanding, and although Defendant has not challenged his conviction or the legality of his sentence, the case is not moot since the fact of Defendant's revocations from parole could have future consequences for any future convictions for which Defendant may be sentenced: Defendant's revocations from parole signal Defendant is a poor candidate for parole or probation, and would likely appear in a presentence report and be given consideration in sentencing Defendant for any new offenses. *See* Commonwealth v. Carter, 523 A.2d 779, 781 (Pa.Super. 1987).

In addition, "[i]n evaluating [the prejudice] component of the test we must bear in mind the nature of the proceeding. Parole, as well as probation, is primarily concerned with the rehabilitation and restoration of the individual to a useful life. It is a discretionary penological measure to which a defendant has no absolute right. Thus, the controlling consideration at a revocation hearing is whether the facts presented to the court are probative and reliable and not whether traditional rules of procedure have been strictly observed." Commonwealth v. Marchesano, 544 A.2d at 1336 (citations omitted). Further, a parole revocation, unlike a probation revocation, "does not involve the imposition of a new sentence. Indeed, there is no authority for a parole-revocation court to impose a new penalty. Rather, the only option for a court that decides to revoke parole is to recommit the Defendant to serve the already-imposed, original sentence." Commonwealth v. Kalichak, 943 A.2d 285, 290 (Pa.Super 2008).

Here, Defendant's violations and his past record justified revocation of parole and recommitment for the balance of his sentence effective May 12, 2016. While we suspect there is no good time to be in prison from a defendant's perspective, whether Defendant's period of incarceration began, as it did here, on August 8, 2017, when he was arrested; on October 27, 2017, when the revocation hearing was held; or on some later

date appears to be of no consequence under the circumstances of this case. Defendant argues that he was prejudiced by being in prison, not by when he was in prison. (N.T., 10/27/17, pp. 8-9). Given that Defendant has not challenged the violations which form the basis of his revocation or the Court's exercise of discretion in revoking parole and recommitting the Defendant to serve the balance of his sentence, Defendant has not been prejudiced by an "*unnecessary* restraint of personal liberty" due to the delay.

## CONCLUSION

The probative value and reliability of the facts surrounding and underlying the revocation of Defendant's parole are not in dispute. The facts and the context in which they occurred were fairly and accurately presented to the court. Nor has Defendant, who was recommitted to serve the balance of his sentence and given credit for all time spent in prison pending his revocation hearing, been prejudiced by any unnecessary restraint of his freedom. Consequently, Defendant is entitled to no relief based upon a claimed violation of his right to a speedy hearing.

BY THE COURT:

_____
P.J.

[FN-2-18]